IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| ELLA BAKER, et al., | HONORABLE JEROME B. SIMANDLE |
| Plaintiffs, | |
| v. | Civil Action No. 12-494 (JBS/JS) |
| UNITED STATES MARSHAL SERVICE, et al., | |
| Defendants. | **OPINION** |

APPEARANCES:

Paul R. Melletz, Esq.
BEGELMAN ORLOW & MELLETZ
411 Route 70 East
Suite 245
Cherry Hill, NJ 08034
     Attorney for Plaintiffs Ella Baker, Benjamin Frye, Tattyana
     Baker, and Rayion Baker

Wesley L. Fenza, Esq.
Daniel Edward Rybeck, Esq.
WEIR & PARTNERS LLP
457 Haddonfield Road
Suite 310
Cherry Hill, NJ 08107
     Attorney for Defendants City of Camden and Chief of Police
     John Scott Thompson

**SIMANDLE, Chief Judge:**

# I.    INTRODUCTION

This matter comes before the Court following supplemental

briefing on a motion for summary judgment by Defendants Chief of

Police John Scott Thompson and the City of Camden ("the City" or

"Camden"). [Docket Item 59.][1] The Court deferred decision on Defendants' motion for summary judgment and permitted the parties to submit supplemental briefing after Defendants had the opportunity to depose Plaintiffs' expert, Mark Weber. [Docket Item 73.]

This action arises from two allegedly unlawful searches of Plaintiffs' home on November 5 and November 24, 2010. Plaintiffs claim that on November 24, 2010, while searching for an armed fugitive, Anthony Fontanez,[2] members of the United States Marshals Service entered Plaintiffs' house with their guns raised, ordered Ella Baker to leave the house, put guns to the heads of ten year-old Rayion Baker and Tattyana Baker, threatened to kill Rayion Baker, handcuffed Benjamin Frye, and questioned all Plaintiffs for over two hours. The parties agree that the only potentially viable claims remaining in this case are Plaintiffs' claims against the City of Camden and Police Chief Thompson in his official capacity.[3]

---

[1] Although Defendants' subsequent submissions filed on December 12, 2014 appear on the docket as a second motion for summary judgment [Docket Item 75] and a motion to bar expert testimony [Docket Item 76], they are simply the supplemental submissions invited by the Court's November 5, 2014 Order and will be adjudicated herein in conjunction with Defendants' initial motion for summary judgment.
[2] Mr. Fontanez is alternatively referred to in the record as "Antonio Fontanez."
[3] These claims are as follows: negligence against the City of Camden (count VI); § 1983 claims against the City of Camden

The principal issue to be decided is whether, for purposes of showing a custom or practice by the City of Camden for improper training of its SWAT Team officers that is actionable under 42 U.S.C. § 1983 as a deprivation of constitutional rights, there is sufficient evidence in the record from which a reasonable jury could find that the City of Camden failed to train its SWAT Team and such failure caused Plaintiffs' injuries. This requires the Court to consider the admissibility of Weber's report and testimony. The Court must also decide whether Plaintiffs' claims for negligence, conspiracy, and those against fictitious defendants can survive summary judgment. What is not before the Court is any claim against an individual police officer for deprivation of constitutional rights under 42 U.S.C. § 1983, as no officer has been named as a defendant.

For the reasons discussed below, the Court will grant Defendants' motion for summary judgment.

## II.  BACKGROUND

### A.  Facts

This case stems from two searches[4] of Plaintiff Ella Baker's home by members of the United States Marshals Service and the

---

(count VII); § 1985 conspiracy claims against all defendants (count VIII).

[4] The Second Amended Complaint only references two searches. (Am. Compl. [Docket Item 23] ¶¶ 18-19.) Ella Baker testified that her house was searched three times, but could provide no details regarding this alleged third search. (Ella Baker Dep. at 80:12-

Camden Police Department SWAT Team in an effort to arrest
Anthony Fontanez. Prior to November, 2010, Fontanez had several
outstanding warrants for aggravated assault, attempted murder,
kidnapping, robbery, and possession of weapons. (Def. SMF
[Docket Item 59] ¶ 1.) Law enforcement also sought Fontanez as a
prime suspect in an incident during which a house was shot into
using a high-powered rifle. (Id.) Before November, 2010, Ella
Baker's daughter, Tawana Baker, dated Fontanez and Fontanez was
the father of Tawana Baker's children. (Id. ¶¶ 2-4.)

On November 5, 2010, two law enforcement officers appeared
at Ella Baker's residence at 156 Pfieffer Street, Camden, NJ in
an attempt to locate Fontanez. (Id. ¶ 5.) Ella Baker was not
home at the time, but she gave permission for the police to
search the home after a telephone conversation with her daughter
Shawana Baker, who was present at the home. (Id. ¶ 6.) The law
enforcement officers searched the home, but did not find
Fontanez. (Id. ¶ 7.)

On November 23, 2010, Pasquale Giannini, a sergeant with
the Camden Police Department and part-time leader of the SWAT
Team, learned that the United States Marshals Task Force

---

16.) Nor have Plaintiffs identified any other evidence in the
record regarding a third search. Accordingly, the Court's
opinion is constrained to the two allegedly improper searches of
the Baker residence on November 5 and November 24, 2010
respectively.

requested the assistance of the SWAT Team the next day to serve an arrest warrant at 156 Pfieffer Street, Camden, NJ. (Id. ¶ 11.) Detective Wiley, an officer with the Camden Police Department who also serves as a task force officer for the U.S. Marshals Service, believed that Fontanez was at his children's mother's house at 156 Pfieffer Street, Camden, NJ. (Id. ¶ 12.)

On the morning of November 24, 2010, members of the SWAT Team and U.S. Marshals Service went to the Baker house. (Id. ¶ 14.) Members of the SWAT Team knocked on the door. (Ella Baker Dep. [Docket Item 71-2] at 26:14-22.) Ella Baker answered and observed SWAT Team members with their guns drawn. (Id.) Ms. Baker never consented to a search of her home. (Id. at 36:1-4.) At the request of the officers, Ms. Baker stepped onto her porch, and as she did so, members of the SWAT Team entered her home. (Id. at 26:18-27:7.) Ms. Baker remained on her porch for 45 minutes while the SWAT Team searched her home. (Id. at 55:11-58:1.) Ms. Baker estimates that the officers remained at her home for an hour and 15 minutes after she was allowed in from the porch. (Id. at 57:24-58:1.)

Defendants concede that there is a dispute of fact as to what occurred after the SWAT Team entered the home. (Def. SMF ¶ 24.) According to Plaintiffs, Benjamin Frye was on the upper floor of the house when the officers entered. Members of the SWAT Team came up the stairs, pushed him to the ground, and zip

5

tied his hands behind his back. (Frye Dep. [Docket Item 59-1] at 38:-40:23.) Frye testified that he was kept on the floor for more than one hour. (Id. at 41:22-25.) Rayion Baker and Tattyana Baker were also upstairs when the officers entered. (Tattyana Baker Dep. [Docket Item 59-1] at 12:6-11.) Tattyana Baker, daughter of Ella Baker, was twelve years old at the time. (Id. at 8:8-16.) Rayion Baker, nephew of Ella Baker, was nine years old. (Rayion Baker Dep. [Docket Item 59-1] at 6:17-8:18.) Two officers with guns said that they would shoot Rayion if he did not stop moving. (Tattyana Baker Dep. at 12:12-20.) Rayion Baker testified that an officer held a gun to his head and threatened to shoot him if he did not stop moving. (Rayion Baker Dep. at 8:20-25.) Frye, Tattyana, and Rayion were taken to the first floor. (Frye Dep. at 46:1-16.) Frye, after being placed on the living room floor, was freed from the zip ties and allowed up. (Id. at 53:2-4.) About five minutes after being brought downstairs, Rayion was permitted to go to school. (Rayion Baker Dep. at 16:20-17:8.) Tattyana was also released to go to school. (Tattyana Baker Dep. at 28:15-16.)

According to Defendants, the search of the Baker residence lasted no more than ten minutes. Detective Wiley testified that the SWAT Team cleared the residence in approximately five to ten minutes. (Wiley Dep. at 18:12-14.) Detective McKeown testified that the SWAT Team was in the house for less than three minutes.

(McKeown Dep. at 32:21-24.) Officer Giannini testified that the search lasted no more than five minutes, after which the SWAT Team turned the residents over to the detectives handling the case. (Giannini Dep. at 24:21-25:7.) Giannini testified that he remained on the first floor while members of the SWAT Team searched the upstairs portion of the home. (Id. at 17:4-19:24.)

Plaintiffs claim they suffered psychological injuries as a result of the allegedly improper search of their home. Ella Baker experiences nightmares and nervousness around police, but she has not received any medical treatment in connection with these conditions. (Ella Baker Dep. at 104:12-18.) Benjamin Frye experiences paranoia around the police and he is generally distrustful of the police. (Frye Dep. at 59:22-25.) He suffered no physical injuries, nor any lost wages as a result. (Id. at 60:10-18.) Tattyana Baker suffers nervousness around the police due to her experience, but has not received any medical treatment. (Tattyana Baker Dep. at 33:16-34:12.) Rayion Baker, like his cousin, is fearful of the police ever since the incident. (Rayion Baker Dep. at 19:22-20:22.) There is no evidence that Rayion sought medical treatment.

The record includes competing expert reports. Plaintiffs rely on the expert report by Mark Weber. Weber's report identifies two primary issues: (1) whether proper operational procedures were followed during the search of the Baker

residence, and (2) whether the SWAT Team employed excessive force during the search. Weber concludes that the Camden Police Department "failed to follow their own Rules and Regulations." (Weber Report [Docket Item 75] at 3.) Weber also concludes that the SWAT Team used excessive force by drawing a weapon on Tattyana and Rayion Baker and by detaining Frye with his hands behind his back for a nearly one hour.[5] (Id.) Notably, Weber opines that the Camden Police Department in July, 2010 "was in disarray," "lacked the proper protocols and training necessary to sustain a Swat team," and that "[t]his lack of resource [sic] led to poor training by the Swat Team at the time and caused them not to establish or properly follow protocols dealing with certain operations such as entry and searches of residential properties while occupied." (Id. at 3-4.)

Defendants rely on the expert report of John J. Ryan. Ryan's report concludes that "the actions in dealing with this entry were consistent with all generally accepted policies, practices, training, and legal mandates with respect to use of force and special operations in law enforcement." (Ryan Report [Docket Item 75] ¶ 59.)

---

[5] However, Weber, at his deposition, limited his opinion regarding excessive force to the officers' treatment of the two children, Tattyana and Rayion Baker. (Weber Dep. at 105:9-20.)

**B.   Procedural background**

Plaintiffs filed their initial complaint on January 26, 2012, naming as defendants the United States Department of Justice and the United States Marshals Service. [Docket Item 1.] Plaintiffs alleged violations of the Federal Tort Claims Act ("FTCA"), 42 U.S.C. § 1983, and 42 U.S.C. § 1985, as well as the Fourth, Fifth, and Fourteenth Amendments of the United States Constitution. On November 6, 2012, Plaintiffs filed an Amended Complaint [Docket Item 10] naming the United States of America, the City of Camden, Chief of Police John Scott Thompson, and various John Does as defendants, thereby eliminating the United States Department of Justice and the United States Marshals Service as parties. On January 17, 2013, the Court dismissed all claims against the United States. [Docket Items 21 & 22.] Plaintiffs filed a Second Amended Complaint [Docket Item 23] on February 15, 2013 asserting claims under the FTCA, state tort law, the United States and New Jersey constitutions, 42 U.S.C. § 1983, and 42 U.S.C. § 1985. The Court again dismissed all claims against the United States for lack of subject matter jurisdiction on July 15, 2013. [Docket Items 34 & 35.] As such, the City of Camden and Chief of Police Thompson are the only remaining defendants who have been identified.[6]

_____

[6] The Second Amended Complaint names two groups of John Doe officers and asserts claims against both groups in Counts I-

On June 16, 2014, Plaintiffs filed a motion for leave to file a third amended complaint, seeking to add Lt. Pasqual Giannini as a defendant in his individual capacity as leader of the Camden Police SWAT Team that entered Plaintiffs' house on November 24, 2010. [Docket Item 51.] Judge Schneider denied Plaintiffs' motion [Docket Item 58] and this Court affirmed. [Docket Item 70.]

Defendants filed the instant motion for summary judgment on August 28, 2014, asserting, inter alia, that Plaintiffs' expert report by Mark Weber is inadmissible and should not be considered because it fails to comply with Rule 26(a)(2)(B). [Docket Item 59.] By Order enter November 5, 2014, the Court deferred decision on Defendants' motion and permitted the parties to submit supplemental briefing following Mr. Weber's deposition.[7] [Docket Item 73.] Defendants subsequently filed their supplemental submissions which were docketed as a second motion for summary judgment [Docket Item 75] and a motion to bar

---

VIII. John Does I-II designate unidentified members of the United States Marshals Service. John Does III-X designate unidentified members of the Camden Police Department.

[7] In addition to granting Defendants an opportunity to depose Mr. Weber to cure any remaining prejudice by Plaintiffs' failure to timely comply with Rule 26(a), the Court directed Plaintiffs to furnish Defendants with a list of all Mr. Weber's publications authored in the previous ten years or a statement that no such publications exist. Mr. Weber then submitted a certification indicating that he has not authored nor published any works within the last ten years. [Docket Item 74.]

expert testimony [Docket Item 76]. Plaintiffs then filed their supplemental opposition [Docket Item 79] and Defendants filed a reply [Docket Item 80]. Both parties have incorporated their previous submissions in support of and opposition to Defendants' motion for summary judgment. Accordingly, the foregoing addresses Defendants' motion for summary judgment and all papers submitted therewith.

### C.   Parties' arguments

Defendants, in their initial submission in support of their motion for summary judgment, argued that Weber's report is inadmissible because it fails to comply with Rule 26(a)(2)(B); it is untimely; and portions of Weber's report are beyond his qualifications. Additionally, Defendants argued that the fictitious defendants should be dismissed because they cannot be identified; that Plaintiffs' negligence claims under the New Jersey Tort Claims Act are barred because Plaintiffs have provided no evidence of permanent injury; that Plaintiffs' § 1983 claims must be dismissed to the extent they rely on vicarious liability; that Plaintiffs have failed to identify an official policy or custom that caused Plaintiffs' alleged injuries necessary to establish a claim under Monell v. New York City Dep't of Soc. Servs., 436 U.S. 658 (1978); that Plaintiffs' conspiracy claims under 42 U.S.C. § 1985 must be dismissed for failure to produce any evidence of a conspiracy; and that all

federal claims must be dismissed because Defendants did not
violate Plaintiffs' constitutional rights.

Plaintiffs, in their initial opposition, asserted that
Weber's report is admissible because the alleged deficiencies
caused no prejudice to Defendants. Plaintiffs argued that a
reasonable jury could find that the City of Camden lacked
training protocols for its SWAT Team which caused Plaintiffs to
suffer constitutional injury and that members of the SWAT Team
violated Plaintiffs' clearly established constitutional rights.

In supplemental briefing, Defendants challenge Weber's
qualifications to testify as an expert under Fed. R. Evid. 702
and argue that his testimony is unreliable and fails to fit the
facts of the case. Defendants thus contend that Weber's report
and testimony are inadmissible and should not be considered in
opposition to their motion for summary judgment. Alternatively,
Defendants maintain that Weber's report and testimony is
insufficient to create a genuine dispute of material fact as to
whether Plaintiffs' injuries were caused by a municipal policy
or custom as required to support a Monell claim.

In response, Plaintiffs again argue that Weber's report and
testimony are admissible. Plaintiffs also make clear that their
§ 1983 claim is based on the City of Camden's failure to train
its SWAT Team. Plaintiffs assert that the conflicting expert
evidence regarding Camden's failure to train precludes summary

judgment. Plaintiffs further reiterate their argument that their clearly established constitutional rights were violated.

## III. STANDARD OF REVIEW

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the non-moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is "material" only if it might affect the outcome of the suit under the applicable rule of law. Id. Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment. Id. The Court will view any evidence in favor of the nonmoving party and extend any reasonable favorable inferences to be drawn from that evidence to that party. Scott v. Harris, 550 U.S. 372, 378 (2007).

## IV. DISCUSSION

The Court will address Defendants' arguments regarding Plaintiffs' negligence and conspiracy claims, as well as claims against fictitious defendants before turning to the central question of Weber's report and Plaintiffs' claim for municipal liability.

13

### A.    Fictitious defendants

The Court will grant Defendants' motion for summary judgment as to Plaintiffs' claims against fictitious defendants, John Does I-X, because they have not been identified. "Courts will allow claims based upon 'fictitious' defendants because they may be found and named later through the discovery process." K.J. ex rel. Lowry v. Div. of Youth & Family Servs., 363 F. Supp. 2d 728, 740 (D.N.J. 2005) (citing Alston v. Parker, 363 F.3d 229, 233 n.6 (3d Cir. 2004)). However, "it is clear that, if after a reasonable period of discovery a plaintiff has not identified the fictitious defendant, the court may dismiss the fictitious defendant." Martin v. Comunale, Civ. 03-06793, 2006 WL 208645, at *13 (E.D. Pa. Jan. 18, 2006). In the present case, discovery is complete and Plaintiffs have failed to identify the names of the fictitious defendants implicated in Counts I-VIII.[8] Giannini was the only party identified in discovery and Judge Schneider denied Plaintiffs' late attempt to amend and add Giannini as a defendant. This Court affirmed Judge Schneider's denial. Therefore, Defendants' motion for summary judgment will be granted as to Plaintiffs' claims against the

---

[8] After numerous extensions, Judge Schneider set May 30, 2014 as the deadline for fact discovery in this matter. Judge Schneider denied the parties' requests to extend this deadline. [Docket Item 48.]

fictitious defendants who have not been identified nor named as parties.

### B.   Negligence claim under the NJTCA

The Court will also grant Defendants' motion for summary judgment as to Plaintiffs' negligence claim against the City of Camden (Count VI) because it is barred under the New Jersey Tort Claims Act.[9] Under N.J.S.A. 59:9-2(d)

> [n]o damages shall be awarded against a public entity or public employee for pain and suffering resulting from any injury; provided, however, that this limitation on the recovery of damages for pain and suffering shall not apply in cases of permanent loss of a bodily function, permanent disfigurement or dismemberment where the medical treatment expenses are in excess of $3,600.00.

N.J.S.A. 59:9-2(d). The Act's provision of immunity to public employees - including N.J.S.A. 59:9-2(d)'s so-called "verbal threshold" immunity - is not available, however, in cases where the employee acted outside the scope of his or her duties, criminally, or maliciously. Section 59:3-14(a) of the Act provides that "[n]othing in this act shall exonerate a public employee from liability if it is established that his conduct was outside the scope of his employment or constituted a crime, actual fraud, actual malice or willful misconduct." N.J.S.A.

---

[9] Plaintiffs provide no argument to the contrary. Plaintiffs only note that the verbal threshold provision of the NJTCA does not apply to claims under 42 U.S.C. § 1983. This is true, but unresponsive to Defendants' argument regarding the viability of Plaintiffs' negligence claim against the City of Camden under the NJTCA.

59:3-14(a). See also Taglieri v. Moss, 367 N.J. Super. 184, 195-96 (App. Div. 2004).

It is undisputed in the instant case that Plaintiffs have offered no evidence of permanent injury. Moreover, there is no evidence in the record indicating that Plaintiffs sought any medical treatment for their emotional and/or psychological injuries, much less amassed medical treatment expenses exceeding $3,600.00. Moreover, Plaintiffs have not alleged, nor proffered evidence to support an inference, that the City of Camden is liable for anything beyond ordinary negligence. Nor have Plaintiffs argued that N.J.S.A. 59:9-2(d) is inapplicable here due to malice or willful misconduct by Defendants. Therefore, the Court will grant Defendants' motion for summary judgment as to Plaintiffs' negligence claim against the City of Camden because it is barred by N.J.S.A. 59:9-2(d).

### C.  Conspiracy claim under 42 U.S.C. § 1985

Defendants have similarly failed to offer any evidence of a conspiracy to support a claim under 42 U.S.C. § 1985. There are three types of conspiracies recognized under 42 U.S.C. § 1985. Altieri v. Pennsylvania State Police, Civ. 98-5495, 2000 WL 427272, at *16 (E.D. Pa. Apr. 20, 2000). Section 1985(1) prohibits "two or more persons" from conspiring to interfere with a federal officer's performance of his duties. Shulman v. Zsak, 485 F. App'x 528, 531 (3d Cir. 2012), cert. denied, 133

16

S.Ct. 1283 (2013) (citing Desi's Pizza, Inc. v. City of Wilkes-Barre, 321 F.3d 411, 423 n.1 (3d Cir. 2003)). Section 1985(2) addresses conspiracies to obstruct justice and to intimidate litigants and witnesses. Id. Section 1985(3) creates a cause of action against any two persons who "conspire . . . for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws . . . ." 42 U.S.C. § 1985(3). A complaint under section 1985(3) "must allege that the defendants did (1) conspire . . . (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws. It must then assert that one or more of the conspirators (3) did, or caused to be done, any act in furtherance of the object of the conspiracy, whereby another was (4a) injured in his person or property or (4b) deprived of having and exercising any right or privilege of a citizen of the United States." Griffin v. Breckenridge, 403 U.S. 88, 102-03 (1971).

As with their negligence claim, Plaintiffs have provided no response to Defendants' argument that their conspiracy claim should be dismissed. Neither the Second Amended Complaint nor Plaintiffs' briefing indicates the type of conspiracy claim they assert or which section of 42 U.S.C. § 1985 is implicated

17

thereby.[10] More importantly, Plaintiffs do not identify any evidence of a conspiracy in the record. As Defendants note, there is no evidence of any agreement between any of the defendants, including members of the Camden Police Department and the U.S. Marshals, for anything but coordination and support during the execution of a lawful arrest warrant. Therefore, the Court will grant Defendants' motion for summary judgment as to Plaintiffs' conspiracy claim.

### D. Section 1983 claim for failure to train

Plaintiffs concede that their § 1983 claim is based solely on Camden's failure to train its SWAT Team.[11] They argue that Defendants have produced no evidence of established policies or protocols regarding the training of the SWAT Team and that "the Court must determine if a reasonable jury could find that the failure of Camden to regularly train its SWAT Unit in threat

---

[10] To the extent Plaintiffs attempt to assert a claim under 42 U.S.C. § 1985(3), they have failed to allege discriminatory animus or identify factual support for a finding of same. Farber v. City of Paterson, 440 F.3d 131, 135 (3d Cir. 2006) ("[B]ecause § 1985(3) requires the 'intent to deprive of *equal* protection, or *equal* privileges and immunities,' a claimant must allege 'some racial, *or perhaps otherwise class-based,* invidiously discriminatory animus behind the conspirators' action" in order to state a claim.'").

[11] Although it is not clear from the Second Amended Complaint or Plaintiffs' briefing whether Plaintiffs attempt to assert claims under § 1983 against both the City of Camden and Chief of Police Thompson in his official capacity, the Court notes that its reasoning, infra, applies with equal force to both remaining defendants.

assessment was deliberately indifferent to the rights of unarmed children that may be encountered in the course of the SWAT team conducting searches for dangerous fugitives."[12] (Pl. Opp. [Docket Item 71] at 9-10.) Plaintiffs assert that the conflicting expert opinions "as to the likely and obvious consequences of maintaining an active SWAT team with no regular training sessions on the use of force of threat assessment" requires a credibility determination by a jury. (Id.)

Plaintiffs' arguments in support of their failure to train claim require the Court to address the admissibility of Weber's report and testimony.

### 1. Weber's report and testimony

Because it is clear that Plaintiffs only assert a § 1983 claim for failure to train, the Court need only consider the admissibility of Weber's opinions regarding the adequacy of the training provided to the SWAT Team.[13] Weber's report and

_____

[12] Additionally, Weber at his deposition clarified that he found nothing wrong with the officers applying restraints to Mr. Frye during the course of the search and that his opinion regarding the improper conduct of the officers is limited to their treatment of the two children, Tattyana and Rayion Baker. (Weber Dep. at 105:9-20.)

[13] The Court need not consider the admissibility of Weber's opinions regarding record-keeping because they are irrelevant to Plaintiffs' failure to train claim. Whether Defendants had protocols regarding record-keeping and documentation of events like those at issue in the instant case has no bearing whether Defendants were deliberately indifferent to the need to train the SWAT Team and whether any deficiency in training caused Plaintiffs' alleged injuries.

testimony as to Camden's failure to train its SWAT team in this regard are unreliable and thus inadmissible.

The admissibility of expert opinions is governed by Fed. R. Evid. 702 & 703, and Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579 (1993), and its progeny. Rule 702 provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. "The District Court has discretion to determine whether expert testimony will help the trier of fact." Berckeley Inv. Grp., Ltd. v. Colkitt, 455 F.3d 195, 217 (3d Cir. 2006).

This Rule has been distilled into "a trilogy of restrictions on expert testimony: qualification, reliability, and fit." Schneider ex. rel. Estate of Schneider v. Fried, 320 F.3d 396, 404 (3d Cir. 2003) (citation omitted). Qualification refers to the requirement that the witness possess specialized expertise. The Third Circuit has interpreted this requirement liberally, holding that "a broad range of knowledge, skills, and training qualify an expert as such." In re Paoli R.R. Yard PCB Litig., 35 F.3d 717, 741 (3d Cir. 1994). Reliability means that

the expert's testimony must be based on the "methods and procedures of science" rather than on "subjective belief or unsupported speculation," and "[p]roposed testimony must be supported by appropriate validation . . . ." Daubert, 509 U.S. at 590. The fit requirement "goes primarily to relevance by demanding a valid scientific connection to the pertinent inquiry as a precondition to admissibility." Id. at 580.

Weber's opinions as to Camden's alleged failure to train its SWAT Team are unreliable. Weber's report contains a series of conclusions regarding the state of the Camden Police Department around November, 2010 and the allegedly inadequate training that resulted. Specifically, Weber concludes that a "lack of resource[s] led to poor training by the Swat Team at the time and caused them not to establish or properly follow protocols dealing with certain operations such as entry and searches of residential properties while occupied." (Weber Report at 4.) However, Weber at his deposition could not provide a basis for his opinion regarding a lack of training beyond the conduct of the officers giving rise to this litigation.

Rather surprisingly, Weber conceded that he did not review any materials regarding the training of the Camden SWAT Team. (Weber Dep. 51:15-18.) Weber admitted that he does not even know what training the Camden SWAT team received in the years preceding the incident at issue:

21

> Q: So as you sit here today you don't know what training the
> City of Camden SWAT team received back when this incident
> occurred? And I will say in the years 2009/2010 area. Correct?
> A: I didn't read anything that gave me anything about their
> training.
> . . .
> Q: In any of the materials that you were provided for the
> purposes of evaluating this case and ultimately writing your
> report, did you see in any of the materials that you were
> provided that any members of the SWAT team of Camden City
> Police Department did not receive their twice annual mandated
> Attorney General Use of Force training?
> A: No, I didn't receive any documentation on that.

(Weber Dep. at 52:2-25.) Because Plaintiffs did not identify the

officers involved, Weber could not and did not verify whether

each officer received certain training. (Id. at 53:7-12.) Beyond

the Attorney General's mandate regarding use of force training,

Weber stated that there is no other use of force training

requirement in New Jersey.[14] (Id. at 53:13-21.) Moreover, Weber

is unaware of any rule or regulation pertaining to the City of

Camden that would require SWAT Team members to receive

additional training regarding the use of force. (Id. at 54:13-

55:1.)

As to Weber's opinion that the City of Camden failed to

establish written protocols concerning the treatment of children

during searches, Weber conceded that he is unaware of any

organization that has called for such written protocols. (Id. at

---

[14] To the extent Weber opines that the Camden Police Department
failed to follow their own rules and regulations, this opinion
undermines Plaintiffs' § 1983 claim based on a policy or custom
of inadequate training.

90:20-24.) Indeed, Weber's opinion in this regard is based on "look[ing] around" and having "talked to some people" who "couldn't find anything." (Id. at 91:3-4.) Although Weber opined in his report that rampant call-outs in the Camden Police Department prevented the SWAT Team from conducting proper training, Weber lacked any information linking the officers involved in the search of the Baker residence to frequent absences or call-outs.[15] (Id. at 95:10-17.) Importantly, Weber admitted that his opinion that Camden should have developed protocols and standard operating procedures before establishing the SWAT Team is based solely on his view of this particular case. (Id. at 101:1-102:2.)

Having reviewed Weber's report and deposition, the Court finds that his opinions are nothing more than "subjective belief or unsupported speculation." Daubert, 509 U.S. at 590. As this Court has previously noted, "there is no reliable foundation for [an expert's] expert testimony" when an expert would "seem[ ] to base his conclusions on his own authority . . . [w]ithout 'industry standards' to rely upon," . . . "[b]ecause 'knowledge connotes more than subjective belief or unsupported

---

[15] Moreover, Weber based his opinion that the City of Camden Police Department was in "disarray" in July, 2010 on newspaper articles which he conceded are not authoritative or reliable. (Weber Dep. at 93:7-24.) He then admitted that his opinion regarding the difficulty of scheduling training for the SWAT team was mere supposition. (Id. at 95:6-96:16.)

speculation.'" <u>Lasorsa v. Showboat: The Mardi Gras Casino</u>, Civ. 07-4321 (JBS), 2009 WL 2929234, at *4-5 (D.N.J. Sep. 9, 2009). In <u>Lasorsa</u>, this Court found that the expert's testimony should be precluded under Rule 702 because it lacked a "reliable, objective basis . . . stemming from identifiable industry standards, codes, publications or training." <u>Id.</u> at *5.

Likewise in the present case, Weber's opinion regarding Camden's alleged failure to train its SWAT Team is based on his own subjective belief. He is aware of no other requirement applicable to the City of Camden that contemplates more than Attorney General Requirements regarding use of force training which mandates training twice per year.[16] Weber was even more explicit in conceding the deficiencies in his opinion regarding written protocols. He candidly admitted that this opinion is based solely on the facts of this particular case. As such, it is apparent from Weber's deposition that his opinions are not based on applicable regulations or standard practices, and Plaintiffs have offered little, if anything, in briefing to elucidate Weber's methodology. Even if Weber could identify a

---

[16] Defendants, to the contrary, have proffered evidence that Camden complied with the twice-per-year requirement and that Camden offered additional training to their SWAT Team members beyond that mandated by the Attorney General. (Giannini Dep. at 24:1-2; Def. Ex. 13). Thus, the only evidence on this point in the record is that Camden complied with the only known training requirement pertaining to its SWAT Team.

basis for his opinion beyond his own knowledge and experience,
Weber has conceded that he does not know what training the SWAT
Team received. Therefore, the Court finds Weber's opinion
unreliable as it is based on nothing more than his own
subjective belief regarding the appropriate training the SWAT
Team should have received and his speculation as to whether the
SWAT Team received it. <u>See</u> <u>Schneider ex rel. Estate of Schneider</u>
<u>v. Fried</u>, 320 F.3d 396, 404 (3d Cir. 2003) ("[T]he testimony
must . . . must be based on the methods and procedures of
science rather than on subjective belief or unsupported
speculation; the expert must have good grounds for his on her
belief.") (internal quotations omitted); <u>Thomas v. Cumberland</u>
<u>Cnty.</u>, Civ. 09-1323 (JBS), 2012 WL 3780452, at *5 (D.N.J. Aug.
31, 2012). It is thus impermissible to consider Weber's opinion
on this motion for summary judgment.[17]

### 2.   Failure to train claim[18]

Without Weber's opinions regarding Camden's failure to
train its SWAT Team, Plaintiffs are unable to defeat Defendants'

---

[17] Having found Weber's opinions unreliable, the Court will not
address Defendants' arguments that his opinions exceed his
qualifications and fail to fit the facts of this case.
[18] Defendants argue that Plaintiffs' Second Amended Complaint
fails to adequately allege a claim for municipal liability.
Indeed, the only allegations related to inadequate training
appear in support of Plaintiffs' negligence claim (Count VI).
Although Defendants are correct that Plaintiffs have not
adequately pleaded a claim for municipal liability which would

motion for summary judgment. Plaintiffs must identify a municipal policy or custom which caused a deprivation of Plaintiffs' constitutional rights. As discussed above, Weber's report and testimony do not reliably suggest that Camden failed to train its SWAT Team and that this failure amounted to deliberate indifference by Defendants. Importantly, Plaintiffs have failed to adduce any other evidence of such a policy or custom elsewhere in the record. See City of Canton, Ohio v. Harris, 489 U.S. 378, 389 (1989) ("Only where a failure to train reflects a 'deliberate' or 'conscious' choice by a municipality—a 'policy' as defined by our prior cases—can a city be liable for such a failure under § 1983.").[19]

It is well-established that municipal liability under § 1983 "may not be proven under the respondeat superior doctrine, but must be founded upon evidence that the government unit itself supported a violation of constitutional rights." Bielevicz v. Dubinon, 915 F.2d 845, 850 (3d Cir. 1990) (citing Monell v. New York City Dep't of Soc. Servs., 436 U.S. 658 (1978)). As a consequence, a municipality is liable under § 1983

---

warrant dismissal under Rule 12(b)(6), the Court will proceed with its analysis of such a claim under Rule 56, Fed. R. Civ. P.
[19] Plaintiffs concede that "whether or not a jury could find that the application of excessive force on unarmed children was an obvious result of Camden's failure to train its SWAT team in threat assessment" is "largely dependent on expert testimony." (Def. Opp. [Docket Item 71] at 10.)

only when "execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." Monell, 436 U.S. at 694.

"Where the policy concerns a failure to train or supervise municipal employees, liability under section 1983 requires a showing that the failure amounts to deliberate indifference to the rights of persons with whom those employees will come into contact." Thomas v. Cumberland Cnty., 749 F.3d 217, 222 (3d Cir. 2014) (internal quotation and citation omitted). Moreover, "the deficiency in training must have actually caused the constitutional violation." Id. (internal quotation and alteration omitted).

The Supreme Court has made clear that "[d]eliberate indifference is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown, 520 U.S. 397, 410 (1997) (internal quotations omitted). "A pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train." Connick v. Thompson, 131 S. Ct. 1350, 1360 (2011) (citing Brown, 520 U.S. at 409)).

"Nevertheless, the Supreme Court posited in Canton that in certain situations, the need for training 'can be said to be 'so obvious,' that failure to do so could properly be characterized as 'deliberate indifference' to constitutional rights' even without a pattern of constitutional violations." Thomas, 749 F.3d at 223 (quoting Canton, 489 U.S. at 390 n.10). "Liability in single-incident cases depends on '[t]he likelihood that the situation will recur and the predictability that an officer lacking specific tools to handle that situation will violate citizens' rights.'" Thomas, 749 F.3d at 223-24 (quoting Brown, 520 U.S. at 409).

In the present case, Plaintiffs have offered no evidence of a pattern of excessive force against children by the Camden SWAT Team, and thus must rely on a single-incident theory of liability. Accordingly, under the framework recently examined by the Third Circuit in Thomas, this Court is called to consider whether a reasonable jury could find that the risk of Plaintiffs' injuries was a "highly predictable consequence" of the City of Camden's failure to train its SWAT Team on the appropriate use of force during the execution of an arrest warrant. See Thomas, 749 F.3d at 225 (quoting Connick, 131 S.Ct. at 1361). However, the Court does not reach this question because Plaintiffs have offered no admissible evidence to support the inference that Camden failed to train its SWAT Team.

Unlike other cases where the Third Circuit concluded that failure to train claims could proceed to a jury, Plaintiffs here are unable to rely on expert testimony regarding Camden's training of its SWAT Team and whether this training, or lack thereof, caused Plaintiffs' injuries. See Thomas, 749 F.3d at 225-26 (noting that plaintiff "provided expert opinion evidence that the failure to provide conflict de-escalation and intervention training was a careless and dangerous practice not aligned with prevailing standards," as well as expert testimony regarding causation); A.M. ex rel. J.M.K. v. Luzerne Cnty. Juvenile Det. Ctr., 372 F.3d 572, 582 (3d Cir. 2004) (observing that plaintiff presented unrebutted expert testimony that defendant "did not have an adequate training program for its staff and did not meet nationally recognized standards for training" and that defendant's failure to train and follow recognized standards resulted in plaintiff's inappropriate treatment).

Moreover, Plaintiffs have identified no other evidence in the record from which a reasonable factfinder could evaluate the adequacy of Camden's training program and whether the alleged deficiencies actually caused Plaintiffs' constitutional harm. It is clear that municipal liability may not be based on the substandard training or the occasional mistakes of individual officers. Canton, 489 U.S. at 390-91 ("That a particular officer

29

may be unsatisfactorily trained will not alone suffice to fasten liability on the city, for the officer's shortcomings may have resulted from factors other than a faulty training program . . . . And plainly, adequately trained officers occasionally make mistakes; the fact that they do says little about the training program or the legal basis for holding the city liable."). Plaintiffs have offered nothing more here. Plaintiffs' argument that members of the SWAT Team failed to follow applicable policies and procedures during the search, including the Camden Police Department Use of Force Policy and Standard Operating Procedures (Pl. Ex. B [Docket Item 79-1]), the International Association of Chief of Police, Use of Force Model Policy Concepts and Issues Paper (Pl. Ex. C [Docket Item 79-1]), and the New Jersey Attorney General Guidelines Use of Force Policy (Pl. Ex. D [Docket Item 79-1]), is an apparent attempt to draw conclusions that their expert did not. Further, none of Plaintiffs' arguments regarding a failure to comply with these policies and procedures overcome the lack of evidence regarding training of City of Camden SWAT Team.[20]

---

[20] Plaintiffs' arguments regarding a failure to comply with applicable policies and procedures may support an inference that the individual officers acted improperly during the search, but they do not support a municipal liability claim based on a failure to train theory where there is no evidence supporting a finding that the City of Camden failed to train the officers involved, or that the City's decisionmaker, here the Chief of Police, ordered that such protective practices be ignored.

The only support Plaintiffs' offer for their § 1983 claim beyond Weber's opinions is Defendants' alleged failure to provide evidence of training in response to a discovery request. Plaintiffs argue that Camden has not produced any evidence of "established policies or protocols regarding the training of its SWAT Unit." (Pl. Opp. [Docket Item 71] at 9.) Plaintiffs contend that in June, 2013 in their first request for documents, Plaintiffs requested "all training manuals or handbooks of any kind provided to Camden City Police Officers" and "[o]utside the Camden Police Department Rules and Regulations, no written manuals or policies were provided." (Id.) Defendants objected to Plaintiffs' request as overbroad and unduly burdensome. (Def. Ex. 12.)[21] As Defendants properly note, however, Defendants' objection to same as overbroad is not evidence that such documents do not exist. Plaintiffs could have narrowed their request or filed a motion to compel, but no such effort or motion is reflected on the docket. Moreover, it is evident from Judge Schneider's June 5, 2014 Order denying the parties'

---

[21] Specifically, Defendants objected to Plaintiffs' request as follows:

> Objection. Request is overbroad, unduly burdensome, and requests documents not reasonably calculated to lead to the discovery of admissible evidence. Without waiving said objection, see Rules and Regulations of the City of Camden Police Department provided with Defendants' Rule 26 disclosures.

(Def. Ex. 12.)

request for an extension of discovery deadlines that Plaintiffs had more than ample time for discovery in this early 2012 case involving an incident in 2010, and to formulate a record of the training the Camden SWAT Team was provided. Instead, Plaintiffs chose to rely on Defendants' response to a single discovery request. Certainly, Defendants' objection to Plaintiffs' discovery request is not evidence of a policy or custom of inadequate training sufficient to support a failure to train claim against a municipality and defeat this motion for summary judgment.

Contrary to Plaintiffs' assertion, it is not Defendants' burden to rebut a presumption of inadequate training. It is instead Plaintiffs' burden to show that the City of Camden was deliberately indifferent to the need to train SWAT Team members and that the lack of training caused a violation of Plaintiffs' constitutional rights in this case. Connick v. Thompson, 131 S. Ct. 1350, 1358 (2011). Because there is insufficient evidence in the record from which a reasonable jury could find that Camden failed to train its SWAT Team, a reasonable jury could not find that the risk of Plaintiffs' injuries was a "highly predictable consequence" of the City of Camden's failure to train. Plaintiffs have failed to offer evidence of either deliberate indifference or causation from which a reasonable jury could find Defendants liable under § 1983. Accordingly, the Court will

grant Defendants' motion for summary judgment as to Plaintiffs'

§ 1983 claims.

**V.   CONCLUSION**

In light of the foregoing, the Court will grant Defendants'

motion for summary judgment on all claims against the remaining

defendants, City of Camden and Police Chief Thompson. An

accompanying Order will be entered.

**January 28, 2015**                    **s/ Jerome B. Simandle**
Date                                JEROME B. SIMANDLE
                                    Chief U.S. District Judge